**No. 2023-1539**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

———————————

IN RE: ERIK BRUNETTI,

Appellant

———————————

On Appeal from the Trademark Trial and Appeal Board in
Serial Nos. 88308426, 88308434, 88308451, and 88310900

———————————

## BRIEF FOR APPELLEE, DIRECTOR OF THE UNITED STATES
## PATENT AND TRADEMARK OFFICE

———————————

<table>
<tr>
<td>

*Of Counsel:*

FARHEENA Y. RASHEED
*Acting Solicitor*

CHRISTINA J. HIEBER
*Senior Counsel for Trademark*
*Policy and Litigation*


*United States Patent and Trademark Office*

</td>
<td>

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney*
*General*

DANIEL TENNY
BRAD HINSHELWOOD
*Attorneys, Appellate Staff*
*Civil Division, Room 7256*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-7823*

</td>
</tr>
</table>

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ............................................................... 1

STATEMENT OF THE ISSUE .................................................................... 1

STATEMENT OF THE CASE ..................................................................... 2

    A.    Statutory Background ................................................................ 2

    B.    Factual Background and Prior Proceedings ............................... 6

SUMMARY OF ARGUMENT ................................................................... 14

ARGUMENT ............................................................................................. 16

I.    Standard of Review ............................................................................ 16

II.    The Board Properly Refused Registration Based on Its Finding That FUCK Fails to Function as a Mark. ....................................................... 17

    A.    Substantial Evidence Supports the Board's Finding That FUCK Fails to Function as a Source Identifier ...................................... 20

    B.    Brunetti Misunderstands the Framework for, and the Basic Premises of, the Board's Finding ................................................ 22

        1.    Failure to Function is an Independent Basis for Refusal of Registration ..................................................................... 23

        2.    The Board's Refusal is Based on Evidence of Consumer Perception in This Record, Not a Conclusion that FUCK Can Never be Registered for Any Goods or Services ................... 26

        3.    Other Registrations Demonstrate Only that Common Words or Phrases May be Registrable ............................. 30

    C.    Brunetti Fails to Demonstrate Error in the Board's Assessment of the Evidence ................................................................................ 32

D.      Brunetti's Constitutional Arguments are Meritless ................................... 39

CONCLUSION ............................................................................................................ 41

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                          **Page(s)**

*Bayer Aktiengesellschaft, In re,*
488 F.3d 960 (Fed. Cir. 2007) ........................................................................ 16

*Biestek v. Berryhill,*
139 S. Ct. 1148 (2019) ................................................................................. 16

*Black Card LLC, In re,*
2023 U.S.P.Q.2d 1376, 2023 WL 8110301 (T.T.A.B. 2023) ................................. 29, 34

*Bose Corp., In re,*
546 F.2d 893 (C.C.P.A. 1976) ........................................................................ 23

*Consolidated Edison Co. of N.Y. v. NLRB,*
305 U.S. 197 (1938) ..................................................................................... 16

*Consolo v. Federal Mar. Comm'n,*
383 U.S. 607 (1966) ..................................................................................... 16

*Cordua Rests., Inc., In re,*
823 F.3d 594 (Fed. Cir. 2016) ........................................................................ 31

*D.C. One Wholesaler, Inc. v. Chien,*
120 U.S.P.Q.2d 1710, 2016 WL 7010638 (T.T.A.B. 2016) ................... 3, 21, 35, 36, 38

*Deporter, In re,*
129 U.S.P.Q.2d 1298, 2019 WL 460492 (T.T.A.B. 2019) ............................................. 37

*Eagle Crest, Inc., In re,*
96 U.S.P.Q.2d 1227, 2010 WL 3441109 (T.T.A.B. 2010) ..................... 3, 25, 35, 36, 38

*Giorgio Foods, Inc. v. United States,*
785 F.3d 595 (Fed. Cir. 2015) ........................................................................ 16

*GO & Assocs., LLC, In re,*
2023 WL 7478711 (Fed. Cir. Nov. 13, 2023) .............................. 3, 5, 19, 24, 25, 32, 35

*Google Tech. Holdings LLC, In re,*
    980 F.3d 858 (Fed. Cir. 2020) ............................................................... 37

*Gyulay, In re,*
    820 F.2d 1216 (Fed. Cir. 1987) ............................................................. 34

*Hanover Star Milling Co. v. Metcalf,*
    240 U.S. 403 (1916) ............................................................................... 17

*Harris-Intertype Corp., In re,*
    518 F.2d 629 (C.C.P.A. 1975) ............................................................... 31

*Hulting, In re,*
    107 U.S.P.Q.2d 1175 (T.T.A.B. 2013) ................................................. 35

*Iancu v. Brunetti,*
    139 S. Ct. 2294 (2019) ...................................................................... 7, 40

*Jack Daniel's Props., Inc. v. VIP Prods. LLC,*
    599 U.S. 140 (2023) ............................................................ 2, 3, 14, 17, 26

*Light, In re,*
    662 F. App'x 929 (Fed. Cir. 2016) ....................................................... 24

*Manco Inc., In re,*
    24 U.S.P.Q.2d 1938, 1992 WL 368706 (T.T.A.B. 1992) ............................ 25-26, 37-38

*Mayweather Promotions, LLC, In re,*
    2020 U.S.P.Q.2d 11298, 2020 WL 6689736 (T.T.A.B. 2020) ........ 3, 11, 21, 25, 27, 35

*Merrill Lynch, Pierce, Fenner, & Smith, Inc., In re,*
    828 F.2d 1567 (Fed. Cir. 1987) ............................................................. 24

*Miracle Tuesday, LLC, In re,*
    695 F.3d 1339 (Fed. Cir. 2012) ............................................................. 34

*Nett Designs, Inc., In re,*
    236 F.3d 1339 (Fed. Cir. 2001) ............................................................. 31

*Northland Aluminum Prods., Inc., In re,*
    777 F.2d 1556 (Fed. Cir. 1985) ............................................................. 18

*Pacer Tech., In re,*
    338 F.3d 1348 (Fed. Cir. 2003) ..............................................33, 33-34, 34

*Pennington Seed, Inc., In re,*
    466 F.3d 1053 (Fed. Cir. 2006) ................................................................. 4

*Roux Labs., Inc. v. Clairol Inc.,*
    427 F.2d 823 (C.C.P.A. 1970) ................................................................ 24

*Royal Crown Co. v. Coca-Cola Co.,*
    892 F.3d 1358 (Fed. Cir. 2018) .............................................................. 18

*Schwauss, In re,*
    217 U.S.P.Q. 361, 1983 WL 51779 (T.T.A.B. 1983) ..........................26, 32

*Shinnecock Smoke Shop, In re,*
    571 F.3d 1171 (Fed. Cir. 2009) .............................................................. 31

*Standard Oil Co., In re,*
    275 F.2d 945 (C.C.P.A. 1960) ...........................................17, 21, 23, 24, 25

*Team Jesus LLC, In re,*
    2020 U.S.P.Q.2d 11489, 2020 WL 7312021 (T.T.A.B. 2020) ..........3, 13, 25

*University of Ky. v. 40-0, LLC,*
    2021 U.S.P.Q.2d 253, 2021 WL 839189 (T.T.A.B. 2021)................10, 26, 28

*USPTO v. Booking.com B.V.,*
    140 S. Ct. 2298 (2020) ......................................................17, 24, 40

*Viterra Inc., In re,*
    671 F.3d 1358 (Fed. Cir. 2012) .............................................................. 16

*Volvo Cars of N. Am., Inc., In re,*
    46 U.S.P.Q.2d 1455, 1998 WL 239298 (T.T.A.B. 1998)...................3, 18, 25

*Vox Populi Registry Ltd., In re,*
    25 F.4th 1348 (Fed. Cir. 2022) ..........................3, 5, 15, 16, 17-18, 24, 25, 26

*Wal-Mart Stores, Inc., In re,*
  129 U.S.P.Q.2d 1148, 2019 WL 193990 (T.T.A.B. 2019) .......................... 27

**Statutes:**

15 U.S.C. §§ 1051-1053 .................................................................. 2

15 U.S.C. § 1051 ................................................................... 1, 17, 23

15 U.S.C. § 1052 ...............................................................1, 2, 17, 23

15 U.S.C. § 1052(a)-(e) ........................................................... 2, 23

15 U.S.C. § 1052(a) ....................................................................... 7

15 U.S.C. § 1053 ............................................................. 1, 2-3, 23

15 U.S.C. § 1071 ........................................................................... 1

15 U.S.C. § 1071(a)(2) .................................................................. 1

15 U.S.C. § 1127 ...............................................................1, 2, 17, 23

28 U.S.C. § 1295(a)(4)(B) ............................................................ 1

**Regulations:**

37 C.F.R. § 2.142(d) .................................................................... 31

37 C.F.R. § 2.145(d)(1) ................................................................ 1

**Other Authorities:**

1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
  (4th ed. 2010) ........................................................................ 36

1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (5th ed.),
  Westlaw (database updated Dec. 2023) ........................................ 27

Trademark Manual of Examining Procedure (July 2022 ed.) .............. 4, 5, 18, 19, 27, 28

## STATEMENT OF RELATED CASES

The Director is unaware of any other appeal from the Trademark Trial and Appeal Board in connection with the trademark applications with Serial Nos. 88/308,426, 88/308,434, 88/308,451, and 88/310,900 in this Court or any other court. The Director is also unaware of any related cases pending in this or any other court that will directly affect, or be affected by, this Court's decision in this appeal within the meaning of Federal Circuit Rule 47.5(b).

## STATEMENT OF JURISDICTION

The Trademark Trial and Appeal Board issued an opinion affirming the refusal to register the proposed mark FUCK in connection with four applications filed by Erik Brunetti on August 22, 2022.  Brunetti sought reconsideration as to all four applications, which the Board denied on December 15, 2022.  Brunetti filed a timely notice of appeal on February 6, 2023.  *See* 15 U.S.C. § 1071(a)(2) (authorizing the Director of the U.S. Patent and Trademark Office (USPTO) to set the time for appeals at no less than 60 days); 37 C.F.R. § 2.145(d)(1) (setting 63-day time limit for appeal).  This Court has jurisdiction under 28 U.S.C. § 1295(a)(4)(B) and 15 U.S.C. § 1071.

## STATEMENT OF THE ISSUE

Brunetti applied to register the word FUCK for various consumer goods and associated retail store services featuring those goods.  The Examining Attorney refused registration under Sections 1, 2, 3, and 45 of the Lanham Act, 15 U.S.C. 1051, 1052, 1053, and 1127, because consumers would not perceive that word as performing the basic functions of a trademark—to distinguish Brunetti's goods and services from others and identify their source—based on extensive evidence showing that FUCK is ubiquitously used as an expression and ornamentally on goods in the marketplace, including some of the same goods in Brunetti's applications.  The Board affirmed the refusal to register.

The issue on appeal is whether substantial evidence supports the Board's finding that the proposed mark FUCK fails to function as a trademark.

## STATEMENT OF THE CASE

### A.    Statutory Background

The Lanham Act defines the terms "trademark" and "service mark," and provides that terms and symbols meeting those definitions may be registered.  *See* 15 U.S.C. §§ 1051-1053, 1127.  In this case, the Board determined that the evidence showed that appellant Erik Brunetti's proposed mark FUCK did not meet the definition of a trademark or service mark for the goods and services identified in his applications, and thus refused registration.

The statutory definitions provide that a proposed mark must "identify and distinguish" the applicant's goods or services from those sold or provided by others and "indicate the source" of those goods or services.  15 U.S.C. § 1127; *see Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 146 (2023) (explaining that "a trademark is not a trademark unless it identifies a product's source . . . and distinguishes that source from others").  A threshold question in evaluating every application to register a trademark or service mark is thus whether the proposed mark satisfies these definitional requirements.  A proposed mark "by which the goods of the applicant may be distinguished from the goods of others" is registrable as a trademark unless it falls within one of the statutory exceptions outlined in 15 U.S.C. § 1052(a)-(e).  15 U.S.C. § 1052.  The same principles apply to service marks.  *Id.*

2

§ 1053.  By contrast, a proposed mark that fails to perform this basic function does not qualify as a trademark or service mark, and thus is not entitled to registration under the Act.  *See Jack Daniel's*, 599 U.S. at 146 (explaining that the Act's "lead criterion for registration is that the mark in fact serve as a 'trademark' to identify and distinguish goods" (quotation omitted)).

The USPTO has routinely refused registration to proposed marks that fail to perform this basic function.  *See, e.g.*, *Vox Populi Registry Ltd.*, 25 F.4th 1348, 1351 (Fed. Cir. 2022) (affirming refusal to register .SUCKS); *In re GO & Assocs., LLC*, 2023 WL 7478711, at *1-4 (Fed. Cir. Nov. 13, 2023) (affirming refusal to register EVERYBODY VS RACISM); *In re Team Jesus LLC*, 2020 U.S.P.Q.2d 11489, 2020 WL 7312021, at *6-7 (T.T.A.B. 2020) (TEAM JESUS); *In re Mayweather Promotions, LLC*, 2020 U.S.P.Q.2d 11298, 2020 WL 6689736, at *1 (T.T.A.B. 2020) (PAST PRESENT FUTURE); *D.C. One Wholesaler, Inc. v. Chien*, 120 U.S.P.Q.2d 1710, 2016 WL 7010638, at *6 (T.T.A.B. 2016) (I ♥ DC); *In re Eagle Crest Inc.*, 96 U.S.P.Q.2d 1227, 2010 WL 3441109, at *3-5 (T.T.A.B 2010) (ONCE A MARINE, ALWAYS A MARINE); *In re Volvo Cars of N. Am. Inc.*, 46 U.S.P.Q.2d 1455, 1998 WL 239298, at *6-7 (T.T.A.B. 1998) (DRIVE SAFELY).  The USPTO's guidance to trademark Examining Attorneys similarly recognizes this basic principle.  The Trademark Manual of Examining Procedure (TMEP) explains that "[m]erely informational matter fails to function as a mark to indicate source and thus is not registrable because consumers would perceive such matter as merely conveying general information about the goods

3

or services or an informational message, and not as a means to identify and distinguish the applicant's goods or services from those of others." TMEP § 1202.04 (July 2022 ed.)[1]; *see In re Pennington Seed, Inc.*, 466 F.3d 1053, 1059 (Fed. Cir. 2006) (noting that the TMEP provides USPTO policy).

As particularly relevant here, the guidance explains that "[m]atter that merely conveys ordinary, familiar, or generally understood concepts or sentiments, as well as social, political, religious, or similar informational messages in common use, would not be perceived as indicating source and thus is not registrable." TMEP § 1202.04(b).[2] Such matter is "likely to be perceived as an expression of support for, or affiliation or affinity with, the ideas embodied in the message rather than as a mark that indicates a single source of the goods or services," and goods bearing the message "are typically purchased because of the expressive sentiment conveyed by the message and not because they serve as a means for the consumer to identify and distinguish

---

[1] All citations in this brief are to the July 2022 edition of the TMEP as the version in effect when the Board issued its opinion on Brunetti's applications. The current edition, from November 2023, reflects no material changes to this section.

[2] The guidance also recognizes that numerous other types of words and symbols may not function as marks depending on consumer perception in the context of the goods and services at issue, such as the title of a single creative work (as opposed to a series), *see* TMEP § 1202.08; names of characters in a creative work, *see* TMEP § 1202.10; background designs and shapes, *see* TMEP § 1202.11; plant varietal names, *see* TMEP § 1202.12; model or grade designations, *see* TMEP § 1202.16; universal symbols (*e.g.*, the recycling or biohazard symbol), *see* TMEP § 1202.17; awareness ribbons, *see* TMEP § 1202.17(e)(i); and hashtags (social media), *see* TMEP § 1202.18.

4

the applicant's goods or services from those of others." *Id.* Thus, "[t]he more commonly a term or phrase is used in everyday speech or in an associational or affinitive manner by various sources, the less likely consumers will perceive the matter as a trademark or service mark for any goods and services." *Id.*

On the other hand, the existence of informational content does not render a proposed mark ineligible for registration. Rather, the limitation applies to "[m]erely informational matter"—that is, matter that does not also serve as a source identifier. TMEP § 1202.04. "[N]othing in the Lanham Act prohibits registration of a mark containing informational matter, so long as the mark also functions to identify a single commercial source." *GO & Assocs.*, 2023 WL 7478711, at *3.

In all instances, whether a particular mark is merely informational or whether it functions as a mark hinges on "how the proposed mark would be perceived by the relevant public"—in other words, whether the evidence shows the proposed mark would be understood "as a means to identify and distinguish the applicant's goods or services from those of others." TMEP § 1202.04; *see Vox Populi*, 25 F.4th at 1351 ("In analyzing whether a proposed mark functions as a source identifier, the Board focuses on consumer perception."). Thus, "[a]n applicant may respond to a merely informational failure-to-function refusal by submitting evidence demonstrating that the matter is perceived as indicating a single source for the identified goods or services." TMEP § 1202.04(d).

## B.    Factual Background and Prior Proceedings

**1.**  In February of 2019, Erik Brunetti submitted four separate intent-to-use applications to register the word FUCK—Application Serial No. 88308426 for goods in Class 09 including sunglasses and carrying cases for cell phones, laptops, and glasses; Application Serial No. 88308451 for goods in Class 14 including jewelry, watches, and related products; Application Serial No. 88308451 for goods in Class 18 including backpacks, wallets, luggage, and other bags; and Application Serial No. 88310900 for services in Class 35 including retail store services featuring the aforementioned and a wide variety of other consumer goods.  SAppx0001-0002. Although each of these applications was separately examined by an Examining Attorney, the record applicable to each application is substantively similar and the legal issues are likewise overlapping, and Brunetti's presentation to the USPTO was thus essentially the same for each.  *See* Br. 13 n.7 (observing that "the records for all four applications are predominantly duplicative"); SAppx0004 n.6 (noting that in the appeal before the Board the Examining Attorney submitted a single responsive brief because Brunetti "filed essentially the same appeal brief for each of the four consolidated cases").  The Board thus referred primarily to the record materials in Brunetti's Class 14 application (for jewelry, watches, and related products), SAppx0004 n.6, and we have followed suit here, including those materials in the supplemental appendix and citing to materials in other applications where necessary.

When Brunetti submitted his applications, another application of Brunetti's—seeking to register FUCT—was pending before the Supreme Court in *Iancu v. Brunetti*, 139 S. Ct. 2294 (2019). The FUCK applications were initially determined to be subject to denial on the same grounds as the application at issue in *Brunetti*—namely, that the proposed mark "[c]onsists of or comprises immoral[] . . . or scandalous matter." 15 U.S.C. § 1052(a). Because the constitutionality of that provision of the Lanham Act was before the Supreme Court in *Brunetti*, however, the Examining Attorney reviewing each application suspended action until the resolution of *Brunetti*. SAppx0097-0098; *accord* SAppx1881-1893, SAppx2421-2433, SAppx3019-3033.

**2.** After the Supreme Court held in *Brunetti* that the Lanham Act's bar on the registration of scandalous or immoral marks was unconstitutional, *see Brunetti*, 139 S. Ct. at 2302, each application was removed from suspension and reexamined. In each instance, the Examining Attorney issued a non-final refusal advising that registration would be "refused because the applied-for mark is a slogan or term that does not function as a trademark or service mark to indicate the source of applicant's goods and/or services and to identify and distinguish them from others," gathering evidence of the extensive use of the term generally (through dictionary definitions and other sources) and specifically on a range of goods in the marketplace, including goods covered by Brunetti's applications. SAppx0116; *accord* SAppx1897, SAppx2438, SAppx3036. For example, in examining the Class 14 application, the Examining Attorney noted that the word FUCK "is commonly used on clothing and jewelry and

other forms of expressions, such as stickers and glassware," and that "[b]ecause consumers are accustomed to seeing this term or expression commonly used in everyday speech by many different sources," consumers would perceive it as expressive rather than "as a mark identifying the source of applicant's goods and/or services." SAppx0116. The Examining Attorney cited numerous instances in which the word was used on jewelry or other goods marketed on a range of websites with no connection to Brunetti. SAppx0118-0142.

Brunetti filed responses to the initial refusals. His responses did not present any evidence of consumer perception of FUCK, much less evidence demonstrating that consumers would perceive FUCK as a source identifier for the products and services in question. Instead, Brunetti devoted his responses to contending that what he termed the "commonplace words doctrine" does not exist, noting that other "widely used commonplace words serve as trademarks," SAppx0174, and citing instances in which profanities have been included in registered trademarks, SAppx0176-0177. Brunetti also contended that the refusal was based on the message conveyed by the word FUCK. SAppx0178-0179; *see also* SAppx2031, SAppx2033-2036, SAppx2624, SAppx2626-2629, SAppx3094, SAppx3096-3099.

The Examining Attorney issued a final refusal of each application on the same ground: "because the applied-for mark is a slogan or term that does not function as a trademark or service mark to indicate the source of applicant's goods and/or services and to identify and distinguish them from others." SAppx0191. Again with reference

8

to the Class 14 application, the Examining Attorney noted evidence from dictionaries and articles that FUCK is "a pervasive and versatile term of expression" that is "commonly used to convey a wide range of sentiments." SAppx0192. The Examining Attorney further noted numerous "examples of goods using the term FUCK on jewelry, clothing, and beverage ware," where the term was used "as a form of expression." SAppx0193. Given that widespread expressive use, "consumers would not view the use as a source identifier for the goods." SAppx0193. Moreover, the evidence demonstrated that "the term FUCK, for the applicant's jewelry goods, fails to function as a trademark because the term does not identify or distinguish the applicant's jewelry from other jewelry using the term." SAppx0193; *see also* SAppx2048-2049, SAppx2641-2642, SAppx3113-3114.

Brunetti subsequently sought reconsideration from the Examining Attorney in each application. The Examining Attorney denied reconsideration, reiterating that FUCK "does not function as a trademark or service mark to indicate the source of applicant's goods and/or services and to identify and distinguish them from others," SAppx1552, and amassing further evidence of FUCK's widespread use, including on the same and related goods, SAppx1553-1555, SAppx1567-1809. *See* SAppx2245-2418, SAppx2838-3016, SAppx3387-3684.

**3.** Brunetti appealed all four refusals to the Trademark Trial and Appeal Board. The Board issued a single opinion resolving all four appeals. The Board observed that "[m]atter may be merely informational and fail to function as a trademark if it is a

common term or phrase that consumers of the goods or services identified in the application are accustomed to seeing used by various sources to convey ordinary, familiar, or generally understood concepts or sentiments," and that "[s]uch widely used messages will be understood as merely conveying the ordinary concept or sentiment normally associated with them, rather than serving any source-indicating function." SAppx0012. And the Board explained that "[t]he critical inquiry in determining whether a proposed mark functions as a trademark [or service mark] is how the relevant public perceives it." SAppx0012-0013 (second alteration in original) (quoting *University of Ky. v. 40-0, LLC*, 2021 U.S.P.Q.2d 253, 2021 WL 839189, at *13 (T.T.A.B. 2021)).

Applying that standard and relying on the same dictionary definitions and articles the Examining Attorney cited, *see* SAppx0014-0016, the Board noted that FUCK "has acquired a multitude of recognized meanings since its first recorded use," and that the word's "popularity has soared over the years, particularly in recent times, transforming what was once a taboo word to be spoken in hushed tones to one that is trendy and cosmopolitan," SAppx0038. The term "is used not only to describe sexual intercourse, but as a word intensifier to express extremes of emotion, negative and positive (e.g., shock), to note disdain, sadness, confusion, panic, boredom, annoyance, disgust, or pleasure; to insult or offend; and to evoke other emotions." SAppx0038-0039 (footnote and quotation marks omitted).

10

The Board also noted that the "record in this case demonstrates that a variety of sources prominently display the term FUCK on a wide range of consumer merchandise and household items, including the kinds of goods identified in the FUCK Applications, *e.g.,* phone cases, laptop cases, jewelry, earrings, rings, bracelets, ornamental lapel pins, carrying bags, fanny packs, tote bags, and wallets." SAppx0044; *see* SAppx0016-0026 (collecting evidence of use on jewelry, bags, cases, and other adjacent product categories). That "[p]rominent use of an applied-for-mark[] . . . 'is probative in determining whether a term or phrase would be perceived in the marketplace as a trademark or as a widely used message.'" SAppx0044 (quoting *Mayweather Promotions,* 2020 U.S.P.Q.2d 11298, 2020 WL 6689736, at \*5). And with respect to Brunetti's application to register FUCK in connection with retail store services, the Board explained that "consumers who encounter FUCK used in connection with such retail services featuring goods commonly used for conveying messages will not perceive FUCK as a source indicator pointing uniquely to" Brunetti, but instead "will still perceive FUCK as conveying its ordinary meaning." SAppx0047.

The Board explained that the evidence gathered by the Examining Attorney sufficed to establish a prima facie case that consumers would not perceive FUCK as identifying the source of the goods and services in the applications. SAppx0040. That made it Brunetti's burden to demonstrate through "competent evidence that consumers would perceive the proposed mark as a source identifier," but Brunetti

11

"failed to offer any evidence of consumer perception of *this* proposed mark," SAppx0041, and "neither argued against nor presented evidence that rebuts the showing made by the Examining Attorney regarding consumer perception of the term FUCK." SAppx0038.

The Board also considered and rejected Brunetti's contrary arguments. It first rejected Brunetti's argument that the Examining Attorney's reference to "commonplace words" was an entirely distinct ground of refusal apart from failure to function, and that the Examining Attorney had not refused registration on failure-to-function grounds. SAppx0027. The Board explained that the stated ground for all four refusals was failure to function, SAppx0027, and noted that Brunetti's argument "repeatedly conflates the basis for the refusal (failure to function as a mark under Trademark Act Sections 1, 2, 3, and 45) with evidence the Examining Attorney presents to support the refusal (that FUCK is such a widely-used commonplace term that it would not be perceived as an indicator of source)," SAppx0028. And the Board rejected Brunetti's suggestion that failure-to-function refusals are impermissible, observing that "the starting point for registration is the statutory definition of a trademark" and that "[a] word that fails to distinguish goods or services does not meet the statutory definition of a trademark, and thus cannot be registered." SAppx0028.

The Board also rejected Brunetti's suggestion that his applications "were refused solely because FUCK is a widely-used message, with no evaluation of whether

12

FUCK would be perceived as an indicator that goods and services have a single source." SAppx0035. The Board explained that "[m]ere commonality[] . . . is not the test." SAppx0036. Instead, the Board must "assess whether Applicant's proposed mark, [FUCK], functions as a mark based on whether the relevant public, *i.e.* purchasers or potential purchasers of the identified [] goods and [] services … would perceive [FUCK] as identifying the source or origin of such goods and services." SAppx0035 (quoting *Team Jesus*, 2020 U.S.P.Q.2d 11489, 2020 WL 7312021, at *3). And addressing Brunetti's reliance on other marks, the Board explained that "the cited third-party registrations for other single word marks, perceived in a vacuum without any contextual information, are not relevant to our determination of whether FUCK functions as a mark for the applied for goods and services." SAppx0035.

Finally, the Board considered and rejected Brunetti's various constitutional arguments, explaining that the refusals here are "not grounded in disagreement with, or prohibition against, any expressive message a proposed mark may convey," but instead is based on "whether the relevant consumers perceive FUCK as a trademark," and thus applies "evenhandedly, regardless of any viewpoint expressed." SAppx0051. And the Board emphasized that there is no evidence that the refusals were based on anything other than the record applicable to these applications, SAppx0054-0058, such that there was no support for any assertion that Brunetti was being treated differently from other applicants.

13

Brunetti sought reconsideration, reiterating his contention that failure to function was not the basis of the Examining Attorney's final refusal. The Board denied reconsideration. SAppx0061-0066.

## SUMMARY OF ARGUMENT

To be eligible for federal registration, a proposed trademark or service mark must identify the source of goods or services and distinguish that source from others. *See, e.g.*, *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 146 (2023). For decades, this Court and the USPTO have recognized that proposed marks that fail to fulfill that basic function are not entitled to registration, and that determining whether those conditions are met requires an inquiry into consumer perception of the proposed mark for the relevant goods and services. The Board here reasonably found that FUCK does not function to identify Brunetti as the source of the goods and services in the applications, given not only the widespread use of the term in a variety of contexts, but also the extensive use of FUCK on the same products that Brunetti applied for (such as jewelry or phone cases) as well as related products.

Brunetti's objections to the Board's finding do not rest on any evidence that consumers would actually perceive FUCK as identifying him as the commercial source of the goods and related services, because he offered no such evidence. Instead, he advances arguments premised on misunderstandings of the Board's opinion and the basic requirement that a mark must actually function as a mark to be registrable. This Court and the Board have recognized for decades that failure to

14

function is an independent ground for refusal of a proposed mark, and that that basis for refusal is "broader than just whether a proposed mark is generic or descriptive." *In re Vox Populi Registry Ltd.*, 25 F.4th 1348, 1351 (Fed. Cir. 2022).  Nor did the Board categorically conclude that FUCK "can never be registered, for any goods or services."  Br. 40.  It instead rested its determination on the evidence before it about how consumers would perceive the term with respect to the relevant goods and services.  And the fact that the USPTO has registered other marks including FUCK or other common words only underscores that common terms or phrases may be registrable.

Brunetti's other arguments fare no better.  The Board applied the same prima facie standard that prevails in other areas of trademark law, including other inquiries into consumer perception, in determining that the Examining Attorney had offered sufficient evidence to demonstrate widespread use of FUCK and that consumers would not perceive that term as indicating source in the context of the applied-for goods and services.  Brunetti was free to offer evidence of his own to demonstrate that consumers would perceive the term as identifying him as the source of the goods or services, but made no effort to do so.  Similarly, the Board properly considered widespread ornamental use of FUCK by third parties for the same and related goods as probative of whether consumers encountering FUCK on Brunetti's goods and related services would perceive the term as identifying source.  Brunetti's more granular arguments about specific pieces of evidence are forfeited because they were

not presented to the Board, but would be meritless in any event. And Brunetti's constitutional arguments simply present his mistaken statutory arguments in constitutional garb.

## ARGUMENT

### I.    Standard of Review

Whether a proposed mark functions as a source identifier is a question of fact that is reviewed for substantial evidence. *In re Vox Populi Registry Ltd.*, 25 F.4th 1348, 1351-52 (Fed. Cir. 2022). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "'[S]ubstantial evidence' . . . is something less than the weight of the evidence," *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 619-20 (1966), but "more than a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison*, 305 U.S. at 229). "[W]here two different conclusions may be warranted based on the evidence of record, the Board's decision to favor one conclusion over the other is the type of decision that must be sustained . . . as supported by substantial evidence." *In re Viterra Inc.*, 671 F.3d 1358, 1361 (Fed. Cir. 2012) (quoting *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 970 (Fed. Cir. 2007)).

Any constitutional questions raised by this appeal would be subject to de novo review. *Giorgio Foods, Inc. v. United States*, 785 F.3d 595, 600 (Fed. Cir. 2015).

16

## II.    The Board Properly Refused Registration Based on Its Finding That FUCK Fails to Function as a Mark.

The purpose of a trademark or service mark is to "distinguish[] one producer's goods or services from another's." *USPTO v. Booking.com B.V.*, 140 S. Ct. 2298, 2302 (2020).  That core function is reflected in the Lanham Act, which defines a "trademark" and "service mark" as "any word, name, symbol, or device[] . . . used by a person[] . . . to identify and distinguish" the person's goods (if a trademark) or services (if a service mark) "from those [of] others and to indicate the source" of the goods or services.  15 U.S.C. § 1127.  The Act similarly provides for an application to register a "trademark," *id.* § 1051, and permits the USPTO to register only "trademark[s] by which the goods of the applicant may be distinguished from the goods of others," *id.* § 1052.  As the Supreme Court recently explained, that function—to operate as a source identifier—is "every trademark's 'primary' function." *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 146 (2023) (quoting *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 412 (1916)); *see also In re Standard Oil Co.*, 275 F.2d 945, 947 (C.C.P.A. 1960) ("The Trade-Mark Act is not an act to register words but to register trademarks.").  After all, "a trademark is not a trademark unless it identifies a product's source (this is a Nike) and distinguishes that source from others (not any other sneaker brand)." *Jack Daniel's*, 599 U.S. at 146.

The core of the source-identifier inquiry is consumer perception—whether consumers perceive the mark as identifying a particular source.  *See Vox Populi*, 25

F.4th at 1351 ("In analyzing whether a proposed mark functions as a source identifier, the Board focuses on consumer perception."); *In re Volvo Cars of N. Am., Inc.*, 46 U.S.P.Q.2d 1455, 1998 WL 239298, at *5 (T.T.A.B. 1998) ("A critical element in determining whether a term or phrase is a trademark is the impression the term or phrase makes on the relevant public."). "[E]vidence of the public's perception may be obtained from 'any competent source.'" *Royal Crown Co. v. Coca-Cola Co.*, 892 F.3d 1358, 1370 (Fed. Cir. 2018) (emphasis omitted) (quoting *In re Northland Aluminum Prods., Inc.*, 777 F.2d 1556, 1559 (Fed. Cir. 1985)). Accordingly, the USPTO can consider a wide range of evidence, including "consumer surveys, dictionaries, newspapers and other publications," as well as evidence of how others use the term in the marketplace. *Id.* (quoting *Northland Aluminum*, 777 F.2d at 1559).

The USPTO's cases and its guidance to trademark examining attorneys note particular categories of proposed marks that are likely not to function as trademarks. The TMEP explains that matter may "merely convey[] . . . an informational message" instead of identifying and distinguishing source where, among other things, the matter "is a common phrase or message that would ordinarily be used in advertising or in the relevant industry, or that consumers are accustomed to seeing used in everyday speech by a variety of sources." TMEP § 1202.04. Such phrases or messages "are likely to be perceived as an expression of support for, or affiliation or affinity with, the ideas embodied in the message rather than as a mark that indicates a single source of the goods or services," and goods with those messages "are typically purchased because

18

of the expressive sentiment conveyed by the message and not because they serve as a means for the consumer to identify and distinguish the applicant's goods or services from those of others."  TMEP § 1202.04(b).  Thus, "[t]he more generalized or commonplace and widely used the matter is, the more likely it would be perceived as merely informational and the less likely it would be perceived as indicating the source of the relevant goods/services."  TMEP § 1202.04(d).

On the other hand, the mere fact that a word or phrase is commonly used does not necessarily preclude registration.  Because the question remains one of consumer perception, even matter that expresses a message or sentiment may be registered, so long as the evidence demonstrates that consumers would perceive the matter as identifying source in addition to whatever message it conveys.  TMEP § 1202.04(d) (explaining that applicants may overcome a failure-to-function refusal "by submitting evidence demonstrating that the matter is perceived as indicating a single source for the identified goods or services"); *In re GO & Assocs., LLC*, 2023 WL 7478711, at *3 (Fed. Cir. Nov. 13, 2023) (noting that "one can immediately envision many marks . . . that contain informational matter (*e.g.*, widely used slogans), but nevertheless function as source-identifiers" and that "nothing in the Lanham Act prohibits registration of a mark containing informational matter, so long as the mark also functions to identify a single commercial source").

**A.    Substantial Evidence Supports the Board's Finding That FUCK Fails to Function as a Source Identifier**

The Board had before it ample evidence that FUCK would be perceived by the relevant consuming public merely as a message or expressive sentiment rather than as a source identifier for the goods and services identified in Brunetti's applications.

First, relying on a broad range of dictionary definitions and articles discussing or using the term FUCK, the Board noted that the term "has acquired a multitude of recognized meanings" and "is arguably one of the most expressive words in the English language." SAppx0038-0039; *see* SAppx0014-0017 (collecting dictionary definitions and other materials). This evidence "amply demonstrates the ubiquity of the term FUCK as an expression to convey a wide range of recognized concepts and sentiments." SAppx0039. This evidence established "a reasonable predicate" for the view "that FUCK is not registrable" because it "is so ubiquitously used as an informational sentiment that the relevant public would not perceive FUCK as indicating the source of the goods and services in the application." SAppx0040-0041.

The Board also noted extensive evidence that "a variety of sources prominently display the term FUCK on a wide range of consumer merchandise and household items, including the kinds of goods identified in the FUCK Applications." SAppx0044. This included extensive evidence of the term's use on items including jewelry, phone cases, and bags, as well as on clothing, mugs, and other related consumer items, all from multiple sources. SAppx0018-0026; *see* SAppx 1567-1682,

20

1751-1809 (material collected by Examining Attorney). This evidence supported the conclusion that "the retail marketplace is 'awash in products that display the term [FUCK] as a prominent ornamental feature of such goods, in such a way that the display itself is an important component of the product and customers purchase the product precisely because it is ornamented with a display of the term in an informational manner, not associated with a particular source.'" SAppx0045 (quoting *D.C. One Wholesaler, Inc. v. Chien*, 120 U.S.P.Q.2d 1710, 2016 WL 7010638, at *6 (T.T.A.B. 2016)); *accord* SAppx0043 (noting that "FUCK is a message that is commonly used on the types of goods as to which Applicant wants exclusive rights to the term"). Such "[p]rominent use of an applied-for-mark, as shown in the examples of record, 'is probative in determining whether a term or phrase would be perceived in the marketplace as a trademark or as a widely used message.'" SAppx0044 (quoting *In re Mayweather Promotions, LLC*, 2020 U.S.P.Q.2d 11298, 2020 WL 6689736, at *5 (T.T.A.B. 2020)); *see Standard Oil*, 275 F.2d at 947 (explaining that "[i]t must be assumed that the ordinary customer" encountering a proposed mark consisting of common terms "would take the words at their ordinary meaning rather than read into them some special meaning distinguishing the services advertised from similar services").

The Board concluded that the extensive evidence collected by the Examining Attorney made out a prima facie case that consumers would not perceive FUCK as indicating a single commercial source. SAppx0040-0041. The burden then shifted to

Brunetti to demonstrate through "competent evidence that consumers would perceive the proposed mark as a source identifier." SAppx0041.  Brunetti did not carry that burden, as he "failed to offer any evidence of consumer perception of *this* proposed mark." SAppx0041.  In particular, as the Board noted, Brunetti "neither argued against nor presented evidence that rebuts the showing made by the Examining Attorney regarding consumer perception of the term FUCK." SAppx0038.  Thus, the Board properly observed that the Examining Attorney's evidence of consumer perception was the only material in the record probative of consumer perception for the categories of goods to which Brunetti intended to affix the mark, and also for the "retail services" to sell those goods.  *See* SAppx0047.

**B.   Brunetti Misunderstands the Framework for, and the Basic Premises of, the Board's Finding**

Brunetti's objections to the Board's decision are somewhat difficult to parse. They seem to rest largely on three fundamental misconceptions about the Board's decision and failure-to-function principles.  First, Brunetti appears to believe that any time an applicant intends to use a term in a trademark fashion (*e.g.*, on a hangtag or label), the term must be registered unless it is generic or specimens of use show it is used ornamentally.  Br. 38; *accord* Br. 7, 25-32, 41-42, 44-45.  Second, Brunetti appears to believe that the Board treats failure to function as establishing "that certain words and phrases can never be registered, for any goods or services."  Br. 40; *accord* Br. 6, 7, 34-35, 40-41, 44, 49, 51-52.  Third, and relatedly, Brunetti appears to believe that the

22

refusal of his applications is based simply on the frequency with which FUCK is used,

such that it is relevant that other commonly used words have been included in

registered marks.  Br. 44-46; *accord* Br. 17, 35, 47, 48-49, 51-52.  A review of this

Court's precedent and the Board's opinion illustrates the error of these propositions.

### 1.    Failure to Function is an Independent Basis for Refusal of Registration

It is well established that registration need not be granted to every non-generic

matter an applicant intends to use in the manner of a mark.  The Lanham Act allows

for registration only of a trademark or service mark, *see* 15 U.S.C. § 1051, and provides

definitions for each of those terms that require that a mark "identify and distinguish"

the applicant's goods or services from those sold or provided by others and "indicate

the source" of those goods or services.  *Id.* § 1127; *see id.* §§ 1052, 1053 (providing that

a mark "by which the goods of the applicant may be distinguished from the goods of

others" is registrable unless it falls within one of the statutory exceptions outlined in

15 U.S.C. § 1052(a)-(e)); SAppx0028-0029.

As these definitions make clear—and as this Court's predecessor explained

decades ago—the Lanham Act "is not an act to register words but to register

trademarks.  Before there can be registrability, there must be a trademark (or a service

mark) and, unless words have been so used, they cannot qualify for registration."

*Standard Oil*, 275 F.2d at 947; *accord In re Bose Corp.*, 546 F.2d 893, 896-97 (C.C.P.A.

1976).  Thus, this Court has repeatedly recognized that matter that does not perform

the basic purpose of a trademark fails to function as a mark and can be refused registration on that basis. *See, e.g.*, *Vox Populi*, 25 F.4th at 1350-51; *GO & Assocs.*, 2023 WL 7478711, at *1-4; *In re Light*, 662 F. App'x 929, 934 (Fed. Cir. 2016); *Standard Oil*, 275 F.2d at 946-47. Moreover, the fact that an applicant intends to use the matter as a mark, or in fact has used it in the manner of a mark, is not dispositive: "The mere fact that a combination of words or a slogan is adopted and used by a manufacturer with the intent . . . that it identify its goods and distinguish them from those of others . . . does not necessarily mean that the slogan accomplishes that purpose in reality." *Roux Labs., Inc. v. Clairol Inc.*, 427 F.2d 823, 828-29 (C.C.P.A. 1970); *see Standard Oil*, 275 F.2d at 947. It is thus flatly incorrect to say that "[i]f Brunetti proposes to use FUCK as a trademark, . . . then it is a trademark." Br. 38.

This Court has also rejected Brunetti's related contention that only "generic" terms fail to function as trademarks. Br. 38. A term is generic if it is understood as the name for the type of good or service at issue. *See Booking.com*, 140 S. Ct. at 2304 ("'[A] 'generic' term names a 'class' of goods or services, rather than any particular feature or exemplification of the class."). Generic terms are "by definition incapable of indicating source" and thus cannot function as trademarks. *In re Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 828 F.2d 1567, 1569 (Fed. Cir. 1987). But as this Court has explained, "the source identifier requirement" reflected in the failure-to-function inquiry "is broader than just whether a proposed mark is generic or descriptive." *Vox Populi*, 25 F.4th at 1351; *see* SAppx0035, SAppx0042. Terms can fail to function as a

24

source identifier even if they do not literally identify or describe the goods being sold. For example, Brunetti appears to concede that the Board properly refused to register "DRIVE SAFELY" for automobiles. Br. 29 (citing *In re Volvo Cars of N. Am. Inc.*, 46 U.S.P.Q.2d 1455, 1998 WL 239298 (T.T.A.B. 1998)). But that is not because "'drive safely' is generic for automobiles," *id.*—no one understands or refers to an automobile as a "drive safely" or describes an automobile that way. Rather, as the Board explained, consumers would perceive that term used in the context of automobiles as conveying a message rather than as a source identifier. *Volvo Cars*, 46 U.S.P.Q.2d 1455, 1998 WL 239298, at *5-7.

Thus, this Court has affirmed the refusal to register matter that is in no way generic, such as .SUCKS as a service mark for domain registry operator services, *Vox Populi*, 25 F.4th at 1350, EVERYBODY VS RACISM for tote bags, t-shirts and other clothing, and services, *GO & Assocs.*, 2023 WL 7478711, at *1-4, and GUARANTEED STARTING for servicing cars for cold weather, *Standard Oil*, 275 F.2d at 946-47. And the Board's precedents dating back decades follow the same course, refusing registration to terms and phrases that fail to function as source indicators even where those proposed marks are not generic. *See, e.g., In re Team Jesus LLC*, 2020 U.S.P.Q.2d 11489, 2020 WL 7312021, at *6-7 (T.T.A.B. 2020) (TEAM JESUS); *Mayweather Promotions*, 2020 U.S.P.Q.2d 11298, 2020 WL 6689736, at *1 (PAST PRESENT FUTURE); *In re Eagle Crest Inc.*, 96 U.S.P.Q.2d 1227, 2010 WL 3441109, at *3-5 (T.T.A.B 2010) (ONCE A MARINE, ALWAYS A MARINE); *In re*

*Manco Inc.*, 24 U.S.P.Q.2d 1938, 1992 WL 368706, at *3-5 (T.T.A.B. 1992) (THINK

GREEN) *In re Schwauss*, 217 U.S.P.Q. 361, 1983 WL 51779, at *1-2 (T.T.A.B. 1983)

(FRAGILE).

> ### 2. The Board's Refusal is Based on Evidence of Consumer Perception in This Record, Not a Conclusion that FUCK Can Never be Registered for Any Goods or Services

As the very concept of a failure-to-function refusal implies, considering

whether a proposed mark is capable of functioning as a mark is a factual question.

*See, e.g.*, *Vox Populi*, 25 F.4th at 1351-52. And that factual question, like others in

trademark law, is assessed by determining whether consumers of the applied-for

goods and services would perceive the proposed mark as serving the basic purpose of

a trademark: to "tell[] the public who is responsible for a product" by identifying and

distinguishing the source of the goods. *Jack Daniel's*, 599 U.S. at 146. Thus, the Board

explained that "[t]he critical inquiry in determining whether a proposed mark

functions as a trademark [or service mark] is how the relevant public perceives it," and

noted that "the relevant consuming public comprises all potential purchasers of …

[such goods and services]." SAppx0012-0013 (quoting *University of Ky. v. 40-0, LLC*,

2021 USPQ2d 253, 2021 WL 839189, at *13 (T.T.A.B. 2021)). And the Board

tailored its analysis to those identified goods and services, repeatedly noting the use of

the term "on the kind of goods identified in the FUCK Applications." SAppx0046;

*accord* SAppx0040-0041, SAppx0043, SAppx0044, SAppx0045.

That approach also accords with the TMEP and the Board's precedents. The TMEP makes clear that matter that consumers perceive as "[m]erely informational" does not meet the statutory definition of a trademark and therefore is not registrable because it does not "identify and distinguish the applicant's goods or services from those of others." TMEP § 1202.04. The TMEP also recognizes the common-sense proposition that "[t]he more generalized or commonplace and widely used the matter is, the more likely it would be perceived as merely informational and the less likely it would be perceived as indicating the source of the relevant goods/services." TMEP § 1202.04(d); *see* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 3.5 (5th ed.), Westlaw (database updated Dec. 2023) (noting that "it is very difficult to achieve trademark status for common phrases" because it is unlikely that consumers will "see [the phrase] as an indicator of origin" (capitalization altered)); SAppx0032-0033. In particular, "if consumers are accustomed to seeing a term or phrase used in connection with goods or services from many different sources, it is likely that consumers would not view the matter as a source indicator for the goods or services." TMEP § 1202.04; *see, e.g.*, *Mayweather Promotions*, 2020 U.S.P.Q.2d 11298, 2020 WL 6689736, at *1; *In re Wal-Mart Stores, Inc.*, 129 USPQ2d 1148, 2019 WL 193990, at *5 (T.T.A.B. 2019).

The fundamentally factual nature of the inquiry is why applicants "may respond to a merely informational failure-to-function refusal by submitting evidence demonstrating that the matter is perceived as indicating a single source for the

identified goods or services." TMEP § 1202.04(d); *see University of Ky.*, 2021

U.S.P.Q.2d 253, 2021 WL 839189, at *17. Here, however, as the Board emphasized,

Brunetti submitted *no* evidence of consumer perception of FUCK for the relevant

goods and services. SAppx0038, SAppx0041. The only competent evidence before

the Board was thus the evidence gathered by the Examining Attorney. And based on

substantial evidence in the record, the Board reasonably determined that the proposed

mark "does not create the commercial impression of a source indicator, and does not

function as a trademark to distinguish Applicant's goods and services in commerce

and indicate their source." SAppx0046.

As these points illustrate, Brunetti is simply wrong to state that the Board

created or applied a rule "that certain words and phrases can never be registered, for

any goods or services," Br. 40, or that "the goods applied for are irrelevant," Br. 45.

Instead, the Board engaged in a factual inquiry into consumer perception of the term

FUCK. As discussed, it considered the use of the term generally—as an expressive

term used by a wide variety of sources in a variety of ways to convey a message, and

thus likely to be understood as conveying that message by members of the consuming

public. And it considered the use of the term specifically in connection with the

goods and services for which Brunetti sought registration, which underscored that

consumers frequently encounter the term used in its expressive sense on a vast array

of products, including those in the applications, illustrating that consumers were likely

to perceive the term as merely expressing a message rather than as a means to

distinguish Brunetti's goods and services from those of others and identify their source.

Although the evidence of record may suggest that a similar analysis would apply in other contexts, the Board's analysis here does not necessarily preclude registration of the mark for different goods or services or based on other factual records. The Board recently made a similar point in *In re Black Card LLC*, 2023 U.S.P.Q.2d 1376, 2023 WL 8110301 (T.T.A.B. 2023). There, the Board reversed a failure-to-function refusal for FOLLOW THE LEADER for certain services, despite evidence of wide use of the phrase generally. *Id.* at *6-9. The Board explained that "[a]lthough the evidence . . . shows common use of FOLLOW THE LEADER in various contexts," the evidence did not show "that the phrase is incapable of functioning as a source identifier in the context of the services identified in the Application," namely, various credit card and travel services. *Id.* at *10. As *Black Card* illustrates, the relevant question is simply whether, in the context of the goods or services identified in the application, consumers would perceive the proposed mark as identifying and distinguishing source.

These points also illustrate the error in Brunetti's continued insistence (Br. 4-5, 6, 11-12, 35-37) that the Board's affirmance of the Examining Attorney's refusal was based on different grounds from those the Examining Attorney invoked. As the Board explained, Brunetti "conflates the basis for the refusal (failure to function as a mark under Trademark Act Sections 1, 2, 3, and 45) with evidence the Examining

Attorney presents to support the refusal (that FUCK is such a widely-used

commonplace term that it would not be perceived as an indicator of source)."

SAppx0028; *see* SAppx0063-0064.  The Examining Attorney—like the Board—

repeatedly explained that the basis for the refusal was that "the applied-for mark is a

slogan or term that does not function as a trademark or service mark to indicate the

source of applicant's goods and/or services and to identify and distinguish them from

others."  SAppx0116; *accord* SAppx0191, SAppx1552; *see* SAppx0027 n.48 (collecting

examples); Br. 36 (Brunetti acknowledging that "the Examining Attorney

"occasionally used the words 'failure to function,'" and asserting that those words

were used "only to explain why the [widely-used commonplace words doctrine]

allegedly applied").  As discussed, the ubiquitious use of the term to convey numerous

messages—along with the widespread use of the term on the very goods for which

Brunetti sought registration—illustrated why the term failed to function, but did not

constitute a separate ground of refusal.

### 3.    Other Registrations Demonstrate Only that Common Words or Phrases May be Registrable

Brunetti's various related arguments about other registrations—including other

registrations of or including frequently used words—are likewise erroneous.  At the

outset, Brunetti's reference to other registrations cannot bolster his case.  This Court

has repeatedly made clear that the USPTO is required to examine each application on

its own factual record and that any prior registrations do not alter that obligation,

whether those registrations are based on different facts or on error. *See, e.g.*, *In re Cordua Rests., Inc.*, 823 F.3d 594, 600 (Fed. Cir. 2016); *In re Shinnecock Smoke Shop*, 571 F.3d 1171, 1174 (Fed. Cir. 2009); *In re Nett Designs, Inc.*, 236 F.3d 1339, 1342 (Fed. Cir. 2001). Indeed, where an applicant cites registrations where the factual record is unknown, those references "have no precedential value." *In re Harris-Intertype Corp.*, 518 F.2d 629, 632 (C.C.P.A. 1975). Where, as here, the applicant fails to present any evidence or identify any Board precedent that supports his position, he cannot make up for that deficiency by citing registration decisions by examining attorneys of different marks on different records.

The value of that rule is particularly apparent here. Brunetti emphasizes that the USPTO has registered some marks that follow a particular structure or use a particular phrase. *See* Br. 27-31, 42-43, 44-46, 47, 50-52. But he did not make any of these registrations part of the record here, and even if he had, purported inconsistent examination of other marks would not relieve the USPTO of assessing the registrability of Brunetti's proposed mark based on the evidence of consumer perception in the record. SAppx0006.[3] To use just one example, Brunetti states that the USPTO denied registration to FRAGILE once but has registered it on five other

---

[3] Brunetti submitted material in conjunction with his appeal brief to the Board, but he does not (and could not) contest the Board's ruling that materials submitted for the first time on appeal were not properly in the record. SAppx0006; *see* 37 C.F.R. § 2.142(d) (providing that the "record should be complete prior to the filing of an appeal" and "[e]vidence should not be filed with the Board after the filing of a notice of appeal").

31

occasions. *See* Br. 26-27, 43. But Brunetti himself states that registration was refused where it was sought for labels—where it plainly did not indicate source, *see In re Schwauss*, 217 U.S.P.Q. 361, 1983 WL 51779, at *1-2—while registration was permitted "for goods other than labels," Br. 26. The fact that a particular word was registered for different goods based on a different factual record hardly demonstrates inconsistency.

Indeed, to the extent Brunetti's invocation of other registrations illustrates anything at all, it is only that the USPTO has registered other marks that use profanities (*e.g.*, the 32 registered marks including the word FUCK that Brunetti identified to the Board, *see* SAppx0052-0054) or are common words (*e.g.*, APPLE or UNITED, Br. 17, 45-46). *See GO & Assocs.*, 2023 WL 7478711, at *3 ("[N]othing in the Lanham Act prohibits registration of a mark containing informational matter, so long as the mark also functions to identify a single commercial source."). The relevant question in each instance is simply what the evidence demonstrates about consumer perception of the proposed mark.

### C. Brunetti Fails to Demonstrate Error in the Board's Assessment of the Evidence

Although Brunetti submitted no evidence of record regarding consumer perception of FUCK for the goods and services identified in the applications, he contends that the Board erred in various respects in assessing the evidence developed

by the Examining Attorney.  These arguments are mistaken and in some instances also forfeited.

    **1.**  Brunetti broadly questions the degree of evidence required for the Board to conclude that FUCK fails to function as a trademark, questioning the "threshold" for demonstrating wide use, Br. 46; *accord* Br. 32, and suggesting that the breadth of information available through internet searches will make it possible to identify many terms as widely used, such that new terms could never be registered, Br. 47-48.

    Brunetti fails to identify—much less engage with—the relevant standard.  As this Court has explained, in assessing consumer perception, the evidence need not prove beyond doubt that consumers will not perceive FUCK as identifying source for the relevant goods and services.  *Compare In re Pacer Tech.*, 338 F.3d 1348, 1352 (Fed. Cir. 2003) (noting that the USPTO "cannot be expected to shoulder the burden of conducting market research" to assess consumer perception), *with* Br. 17 (criticizing the absence of "surveys" or "[o]pinions by experts" supporting the Board's conclusions).  Instead, the USPTO must make out a "*prima facie* case" of consumer perception, which requires the USPTO to "set forth a 'reasonable predicate' for its position," and this Court accepts the Board's finding that the evidence established that prima facie case if there is "substantial evidence, or more than a scintilla of evidence, in support of the PTO's prima facie case."  *Pacer Tech.*, 338 F.3d 1348, 1351-

52.[4]  The Board articulated and applied precisely that standard here.  SAppx0040-

0041.  And as discussed above, *see supra* pp. 20-22, the Board reasonably determined

that threshold was met here given the extensive evidence of widespread use of the

proposed mark as an expressive message on a host of goods in the applied-for classes

and related classes.  As the Board explained, that made it Brunetti's burden to produce

competent evidence supporting his contention that consumers would perceive FUCK

as a source identifier, but Brunetti made no effort to do so.  *See* SAppx0041; *Pacer*

*Tech.*, 338 F.3d at 1352-53.

More generally, the Board explained the error in Brunetti's focus on the

frequency with which particular terms are used in general, emphasizing that the

"[m]ere commonness" of a word or phrase "is not the basis for the refusal."

SAppx0040; *accord Black Card*, 2023 U.S.P.Q.2d 1376, 2023 WL 8110301, at *5.

Rather, the fact that "consumers regularly encounter" the term "as an expression that

is commonly used as such on a wide variety of goods" supports the conclusion that

consumers would not understand the proposed mark as identifying source when they

encounter it on an applicant's goods or in connection with their sale.  SAppx0036.

---

[4] This Court has recognized that that same approach applies across a range of
inquiries into consumer perception the USPTO must undertake, and this one is
no different.  *See, e.g.*, *Pacer Tech.*, 338 F.3d at 1351-52 (applying approach to inherent
distinctiveness); *In re Miracle Tuesday, LLC*, 695 F.3d 1339, 1343-44 (Fed. Cir. 2012)
(same approach for whether a proposed mark is primarily geographically
misdescriptive); *In re Gyulay*, 820 F.2d 1216, 1216-17 (Fed. Cir. 1987) (same for
whether proposed mark was merely descriptive).

**2.**  Brunetti contends that ornamental use of the term by third parties cannot be probative of consumer perception.  Br. 16-17, 18, 20-21, 32-33.  In other words, Brunetti believes that the Board should ignore the fact that consumers in the relevant classes regularly see the proposed mark used on a variety of goods in considering whether consumers would recognize the term as identifying a single commercial source of goods when it appears on his goods.  The Board has repeatedly rejected that notion in favor of the common-sense rule that "[t]he widespread ornamental use of the phrase by third parties 'is part of the environment in which the [mark] is perceived by the public and . . . may influence how the [mark] is perceived.'"  *D.C. One Wholesaler*, 120 U.S.P.Q.2d 1710, 2016 WL 7010638, at *7 (quoting *In re Hulting*, 107 U.S.P.Q.2d 1175, 2013 WL 5407310, at *2 (T.T.A.B. 2013)); *accord Mayweather Promotions*, 2020 U.S.P.Q.2d 11298, 2020 WL 6689736, at *4-5; *Eagle Crest,* 96 U.S.P.Q.2d 1227, 2010 WL 3441109, at *3; *see also GO & Assocs.*, 2023 WL 7478711, at *3 (affirming refusal to register mark where evidence showed the proposed mark "is commonly used in an informational and ornamental manner on . . . other retail items sold by third-parties" and stating that "the Board properly considered . . . third-party uses when assessing how the public would likely perceive the mark").  Where "the marketplace is awash in products that display the [proposed mark] as a prominent ornamental feature of such goods, in such a way that the display itself is an important component of the product and customers purchase the product precisely because it is ornamented with a display of the term in an informational manner," there

is little reason to believe that consumers would recognize a product using the same proposed mark as emanating from "a particular source." *D.C. One Wholesaler*, 120 U.S.P.Q.2d 1710, 2016 WL 7010638, at *6-7; *accord Eagle Crest*, 96 U.S.P.Q.2d 1227, 2010 WL 3441109, at *3. That is true "even when [the proposed mark is] displayed on a hangtag or label." *D.C. One Wholesaler*, 120 U.S.P.Q.2d 1710, 2016 WL 7010638, at *7. And consideration of these third-party uses also underscores the effect of granting registration, which would give Brunetti greater power to "attempt to prevent competitors from using [the term] to promote the sale of their own clothing," even though "'as a matter of competitive policy, it should be close to impossible for one competitor to achieve exclusive rights' in common phrases or slogans." *Eagle Crest*, 96 U.S.P.Q.2d 1227, 2010 WL 3441109, at *3 (quoting 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 7:23 (4th ed. 2010)).

**3.** Brunetti also advances a variety of arguments that he did not advance before the Board. Brunetti contends that the Board should not have considered evidence of the use of FUCK on goods in other related classes and failed to identify specific evidence of use on watches, and also offers granular criticisms of specific items of evidence the Examining Attorney relied on by criticizing the reliability or weight of certain evidence. Br. 18-21, 57-63.

As a threshold matter, all of these arguments are forfeited by Brunetti's failure to raise them to the Board. Arguments about the competence or weight of particular pieces of evidence are precisely the kinds of arguments that should be aired in the

36

administrative process before the agency empowered to find facts and weigh evidence, and Brunetti offers no explanation for failing to do so. *See, e.g.*, *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020). And as discussed, to the extent Brunetti seeks to excuse his forfeiture through his assertion that it was the Board, rather than the Examining Attorney, that first identified failure to function as a ground for refusal, *see* Br. 35-36, that assertion cannot be reconciled with the Examining Attorney's decisions. *See, e.g.*, SAppx0116 (Examining Attorney stating that basis for refusal was that "the applied-for mark is a slogan or term that does not function as a trademark or service mark to indicate the source of applicant's goods and/or services and to identify and distinguish them from others").

None of Brunetti's belated arguments would be meritorious even if considered. Brunetti's arguments about the specific goods or services on which FUCK was used or the context in which it appears suffer from the same errors as his general objection to consideration of ornamental uses. Evidence of widespread use of the proposed mark—whether for the same goods or not—is probative of the experience of consumers encountering the term in the marketplace used in a purely expressive manner in association with a wide variety of goods and the likelihood that consumers would perceive the message for its ordinary meaning rather than as indicating the source of those goods. *See In re Deporter*, 129 U.S.P.Q.2d 1298, 2019 WL 460492, at *6 (T.T.A.B. 2019) (explaining that "*any* evidence demonstrating widespread use of the wording is relevant," regardless of use in commerce); *Manco*, 24 U.S.P.Q.2d 1938,

1992 WL 368706, at *1-2 (affirming refusal to register THINK GREEN for goods based on evidence of use in newspaper articles and other media reports). Usage on closely related goods, in particular, is plainly relevant to whether consumers would perceive the term as identifying a single commercial source when seeing the term used on Brunetti's goods and services. *See, e.g., Eagle Crest*, 96 U.S.P.Q.2d 1227, 2010 WL 3441109, at *3 (considering evidence of use of proposed mark on bumper stickers, posters, and calendars in addition to use of proposed mark on applied-for goods); *D.C. One Wholesaler*, 120 U.S.P.Q.2d 1710, 2016 WL 7010638, at *3 (considering evidence of use on mugs, aprons, and keychains in cancellation proceeding in addition to specific goods for which mark was registered). And in any event, given the other evidence of use of the proposed mark here, these selective objections to particular uses would not provide any basis to question the Board's ultimate conclusion based on the weight of the evidence.

Brunetti's other arguments fare no better. He asserts that various images were not literal photographs of existing merchandise, but rather depictions of products that could hypothetically be made to order. Br. 18-19. Even if he had record evidence to support this claim, it is difficult to understand why it should be relevant that a company chooses to auto-generate images of its products rather than to take a separate photograph of every item it offers. The relevant point is that the company considered items bearing the proposed mark—in a way unrelated to identification of source—sufficiently attractive to consumers that it chose to display them. And

similarly, even assuming that some products are made to order, the fact that companies exhibit prototypes of products with the proposed mark prominently displayed only underscores that consumers would be unlikely to perceive FUCK as a means to distinguish the goods and identifying their source.

### D.    Brunetti's Constitutional Arguments are Meritless

Brunetti briefly lodges a series of constitutional arguments, Br. 52-55, which add little to his erroneous challenges to the Board's statutory analysis.

Brunetti suggests that the refusal of his registrations is based on viewpoint discrimination because the USPTO allows registration of "positive terms" but refuses registration to "negative terms" or "profanity." Br. 53. Brunetti's own arguments illustrate the error of this assertion on a factual level. *See* SAppx0052-0054 (collecting examples cited by Brunetti of registered marks including FUCK). As the Board explained, whether a mark is registered "is not grounded in disagreement with, or prohibition against, any expressive message a proposed mark may convey," but is instead a viewpoint-neutral inquiry based on "whether the relevant consumers perceive FUCK as a trademark." SAppx0051. The Board's decision explains the record basis for its factual conclusion in this case, and as discussed above Brunetti has identified no basis for concluding that the Board has conducted any different analysis when the proposed mark conveyed a different message.

Brunetti also suggests that his applications were refused in "retaliation" for his exercise of his "right to petition," Br. 53-54, presumably referring to his prior

litigation over registration of FUCT. *See Iancu v. Brunetti*, 139 S. Ct. 2294 (2019). Brunetti has offered no evidence to support that suggestion, other than the bare and unremarkable fact that once registration of proposed marks like the one at issue here could no longer be refused under Section 1052(a), Examining Attorneys and the Board have had to analyze whether these marks satisfy the other criteria for registration. As discussed, the Board here considered Brunetti's applications on the record before it and reasonably found that the proposed mark failed to function as a source indicator. Brunetti identifies no error in that finding, and does not explain how a properly supported refusal to register can be retaliation for exercise of his First Amendment rights. Brunetti's prior successful litigation does not guarantee him registration of other marks that fail to perform the basic function of any trademark.

Brunetti's suggestions that the USPTO is "violating the separation of powers" by "add[ing] substantive grounds for refusal" to the Lanham Act, Br. 55, and is violating the Due Process Clause of the Fifth Amendment and the Privileges and Immunities Clause by applying an "arbitrary and irrational standard," *id.*, merely repackage his misunderstanding of the failure-to-function refusal. As discussed, the Lanham Act recognizes that only matter that functions as a mark may be registered, *see supra* pp. 23-24, and the relevant standard is one of consumer perception—a bread-and-butter inquiry of trademark law, *see, e.g., Booking.com*, 140 S. Ct. at 2306, 2307 & n.6 (noting "bedrock principle" that "whether a term is generic depends on its meaning to consumers" and describing inquiry into consumer perception).

## CONCLUSION

For the foregoing reasons, the decision of the Board should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney*
*General*

*Of Counsel:*

FARHEENA Y. RASHEED
*Acting Solicitor*

CHRISTINA J. HIEBER
*Senior Counsel for Trademark*
*Policy and Litigation*

DANIEL TENNY

*/s/ Brad Hinshelwood*
BRAD HINSHELWOOD

*United States Patent and Trademark Office*

*Attorneys, Appellate Staff*
*Civil Division, Room 7256*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-7823*
*bradley.a.hinshelwood@usdoj.gov*

December 2023

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,353 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.


*/s/ Brad Hinshelwood*
Brad Hinshelwood